OPINION
{¶ 1} Jeremy C. Dotson is appealing the judgment of the Clark County Court of Common Pleas convicting him of having weapons while under disability, tampering with evidence, and two counts of involuntary manslaughter.
 {¶ 2} Dotson was indicted on one count of having weapons while under a disability, one count of involuntary manslaughter contrary to R.C. 2903.04(A) and one count of involuntary manslaughter contrary to R.C. 2903.04(B), both with firearm specifications, and one count of tampering with evidence. At trial, the following evidence was adduced:
 {¶ 3} On May 25, 2002, James Lamar Evans was shot once in the head in front of 433 East Grand Avenue in Springfield, Ohio. Several people were gathered on the porch of a neighboring home when they heard a series of "pops" that sounded like firecrackers. They saw Evans exit the van and fall forward onto the sidewalk. One witness, Angela Banks, heard the five explosions before the van had arrived. Several witnesses, including Jeremiah Rothgeb and Carolyn Gillette, heard the "pops" occur as Evans exited the van. When Rothgeb heard the "loud pops," he saw a "flash" coming from an upstairs window. In the window he saw Dotson's face.
 {¶ 4} Evans died of a gunshot wound to the forehead. The caliber of the bullet could not be determined, due to its disintegration upon impact. Clark County Deputy Coroner Robert Stewart, M.D., estimated the size of the bullet to be from a .22 caliber to a .32 caliber firearm.
 {¶ 5} According to Gillette, shortly after the shooting she spotted Dotson in the crowd around Evans. Dotson told her that he had thrown a firecracker which had startled Evans and had made him fall. When law enforcement personnel arrived, Dotson was not present and he did not emerge from his upstairs apartment. Officers gained access to the back stairwell via another occupant of the house, and shouted for an hour for Dotson to open the door. A very sweaty Dotson finally complied, telling officers that he had been "sleeping" and did not hear the commotion. Dotson consented to the officers searching his portion of the house, which included the attic. Officers discovered several rifles, a set of brass knuckles and a substantial amount of ammunition.
 {¶ 6} Dotson's hands were swabbed and tests concluded the presence of gunshot residue on his right and left palms and the back of his left hand. Additionally, the curtains from Dotson's living room were tested and found to contain gunshot residue consistent with being in close proximity of a discharging firearm.
 {¶ 7} Dotson's cousin, David Eugene Green, testified that Dotson had spoken with him prior to the shooting about purchasing a revolver. Green obtained an old .32 caliber revolver and sold it to Dotson for $10 and a small bag of marijuana. After Green helped Dotson post bond, Green was present when Dotson sold the revolver to another individual. Additionally, Dotson commented to Green that he had shot the old revolver out of his second story window. He stated that the bullet had hit a tree, ricocheted and hit Evans, but that he had not intended to kill anyone.
 {¶ 8} Timothy James Looper, Gillette's son and Dotson's neighbor, also testified that Dotson had expressed an interest in obtaining a small caliber revolver during a conversation prior to the shooting. After the shooting, Dotson mentioned to Looper that he had disposed of the gun so that the police would not be able to find it.
 {¶ 9} At trial, Dotson testified that he had spent part of the day with Evans and had returned home in the evening. He was in his upstairs apartment when the shooting had occurred, but did not hear anything because he had been watching television. Dotson did not deny possessing the guns, however he maintained that he had not fired a gun that evening from his window. Additionally, Dotson admitted to purchasing the small revolver from Green, however he stated that he had sold the gun for $50 within an hour after purchasing it.
 {¶ 10} Following a jury trial, Dotson was found guilty of all counts and the accompanying firearm specifications. He was sentenced to terms of imprisonment of three years on the gun specification, seven years on the first manslaughter charge, five years on the having weapons while under a disability charge, and one year for the tampering charge, with all sentences to be served consecutively.
 {¶ 11} Dotson now appeals his convictions and sentences, asserting six assignments of error.
 {¶ 12} Dotson's first assignment of error:
 {¶ 13} "The Appellant was denied a fair trial due to the admission of prohibited prior bad acts evidence[.]"
 {¶ 14} In this assignment of error, Dotson asserts that the State put forth evidence of other bad acts unrelated to the shooting of Evans with the purpose of showing him to be a "person of bad character who would act in conformity therewith." In particular, Dotson argues that the State brought forth evidence that he possessed "[n]umerous guns," a knife which converted into brass knuckles, and drug paraphernalia. He claims that the admission of these items denied him a fair trial and requires a reversal.
 {¶ 15} We disagree. The general rule is that a criminal defendant must first introduce evidence of his good character before the State may offer evidence of the defendant's bad character or reputation. Evid. R. 404(A). The exception to this is provided in Evid. R. 404(B), which states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."
 {¶ 16} Dotson was charged with involuntary manslaughter with a firearm specification, having weapons while under disability, and tampering with evidence. We find that the evidence surrounding the weapons was admissible for a purpose other than for the purpose of showing that Dotson acted in conformity with the character or reputation suggested by that evidence. The State was required to prove that Dotson was guilty of having weapons while under a disability. It is clear that such testimony of the presence of the weapons in Dotson's residence was not introduced to prove conformity with a character trait, but instead was addressing an element of the charges facing Dotson, and thus conformed with a justifiable purpose of other acts under Evid.R. 404(B).
 {¶ 17} Regarding the evidence of drug paraphernalia admitted at trial, the likely purpose of this evidence was to corroborate testimony from various witnesses that they had been with Dotson during the day of the shooting and had periodically smoked marijuana. Such use is not consistent with any of the listed exceptions to Evid.R. 404(B). However, we cannot conclude that admission of the drug paraphernalia was prejudicial to Dotson. The mention of the evidence was brief, especially in comparison to the vast amount of evidence linking Dotson to the shooting. We therefore conclude that the admission of this evidence did not contribute to Dotson's convictions and merely amounted to harmless error. State v. Bryan, 101 Ohio St.3d 272, ¶ 125-127,2004-Ohio-971, 804 N.E.2d 433.
 {¶ 18} For the above-mentioned reasons, we overrule Dotson's first assignment of error.
 {¶ 19} Dotson's second assignment of error:
 {¶ 20} "The Appellant's due process rights were violated when the State failed to provide material exculpatory evidence pursuant to Brady v. Maryland[.]"
 {¶ 21} At trial, Angela Banks testified that she had informed the law enforcement officials that there were four individuals in the van the night of the shooting. Dotson contends that the State acted in bad faith by not providing him with the information that Banks had seen not two, but three other individuals besides Evans exit the van on the night in question. Because this evidence is "materially exculpatory in nature," the State was under a duty to provide him with this information prior to trial. The State claims it was unaware of this line of testimony, and thus placed Officer Estep on the stand to rebut Banks' testimony. Officer Estep testified that he had spoken with Banks prior to trial and that she had never mentioned a fourth person in the van. In fact, Banks told him that "it appeared [Evans] fell." The State asserts that since it was not aware of this information until the time which Banks testified, it had no duty to make this information available to Dotson.
 {¶ 22} "Exculpatory evidence" is defined as evidence favorable to the defendant, which "if disclosed and used effectively, * * * may make the difference between conviction and acquittal." U.S. v. Bagley (1985), 473 U.S. 667, 676,105 S.Ct. 3375.
 {¶ 23} In this instance, we fail to see how the evidence in question was exculpatory, and how Dotson would have been prejudiced by the failure of the State to provide him with the information. Dotson does not articulate to this court exactly what material evidence was contained in the statement which may have made the difference between conviction and acquittal. SeeState v. Johnston (1988), 39 Ohio St.3d 48, 529 N.E.2d 898, paragraph five of the syllabus.
 {¶ 24} Perhaps Dotson is suggesting that such testimony would have benefitted him by casting reasonable doubt on his guilt by suggesting the perpetrator was the alleged fourth individual. This line of testimony, however, is inconsistent with Dr. Stewart's testimony that Evans' injuries were consistent with being shot in the face from a second-story window. It is highly unlikely that a fourth person, who exited the vehicle behind Evans, as he fell out of the van face-first, would be the perpetrator.
 {¶ 25} Accordingly, we must overrule Dotson's second assignment of error.
 {¶ 26} Dotson's third assignment of error:
 {¶ 27} "Appellant was denied a fair trial due to a pattern of prosecutorial misconduct[.]"
 {¶ 28} Dotson argues that because the prosecutor introduced bad acts evidence, withheld materially exculpatory evidence, and engaged in misconduct designed to mislead the jury, he was denied a fair trial.
 {¶ 29} We have already addressed the first two issues in the previous assignments of error, and thus we find no merit in these arguments here. In Dotson's third allegation of prosecutorial misconduct, he alleges misconduct in the line of testimony that a "projectile strike" was in a "straight line" from where Evans fell. Dotson contends that the purpose of the testimony regarding the projectile strike was to mislead and prejudice the jury. Dotson urges this Court to reverse on the basis of prosecutorial misconduct.
 {¶ 30} In considering claims of prosecutorial misconduct, we must examine whether the prosecutor's conduct at trial was improper, and if so, whether this conduct affected the defendant's substantial rights. State v. Lott (1990),51 Ohio St.3d 160, 165, 555 N.E.2d 293. The analysis centers on the fairness of the trial, not the culpability of the prosecutor, in determining if the prosecutor's conduct is grounds for error.State v. Apanovitch (1987), 33 Ohio St.3d 19, 24,514 N.E.2d 394; State v. Maurer (1984), 15 Ohio St.3d 239, 473 N.E.2d 768. Error exists if it is clear beyond a reasonable doubt that the jury would not have found the accused guilty absent the prosecutor's comments. State v. Smith (1984), 14 Ohio St.3d 13,15, 470 N.E.2d 883; State v. Benge (1996), 75 Ohio St.3d 136,141, 661 N.E.2d 1019. In reviewing the statements, the prosecutor's statements must be examined in the context of the record as a whole; harmless errors must be disregarded. UnitedStates v. Hastings (1983), 461 U.S. 499, 509, 103 S.Ct. 1974,76 L.Ed.2d 96. Additionally, the state is permitted wide latitude in commenting on and drawing inferences from the evidence. State v.Stephens (1970), 24 Ohio St.2d 76, 82, 263 N.E.2d 773.
 {¶ 31} We note that Dotson failed to object at trial to the remarks about which he now complains. As a result, those alleged errors are not properly preserved for appellate review, and this court cannot sustain Dotson's argument concerning those remarks unless the error rises to the level of plain error. State v.Wickline (1990), 50 Ohio St.3d 114, 552 N.E.2d 913; State v.Long (1978), 53 Ohio St.2d 91, 92, 372 N.E.2d 804.
 {¶ 32} In this case, the prosecutor elicited testimony from Sgt. Michael Haytas and Timothy Shepherd of the Springfield Police Department Crime Lab, that there was a line from the upstairs window from which Rothgeb viewed Dotson when the gunfire was heard, through the trees to Evans, which continued onto the house across the street. This "projectile strike" was important to demonstrate that Evans' wound could have resulted from being shot from the upstairs window. We fail to see how such testimony misled and prejudiced the jury.
 {¶ 33} Dotson also briefly mentions that the prosecutor in this case "testified" and provided the jury with the caliber and type of weapon used to shoot Evans, despite the failure of experts to pinpoint the exact caliber of bullet that struck Evans. Again, Dotson did not object to such testimony at trial, and we must evaluate this from a plain error standpoint. Statev. Wickline, supra; State v. Long, supra. We do not find that but for this testimony, Dotson would not have been convicted. The prosecution elicited expert testimony that the caliber of bullet and the precise type of weapon was likely between a.22 and a .32 caliber. Green testified that Dotson had purchased a small .32 caliber revolver which he sold after the shooting. Moreover, Dotson admitted to Green that he had accidentally shot Evans. Furthermore, Dotson's hands tested positive for the presence of gunshot residue, as did his curtains from the window in which Rothgeb claimed to have seen Dotson's face immediately after the shooting.
 {¶ 34} Accordingly, as credible evidence was present from which the jury could have concluded Defendant's guilt beyond a reasonable doubt, we find no error. Thus, we find Dotson's third assignment of error to be meritless.
 {¶ 35} Dotson's fourth assignment of error:
 {¶ 36} "The evidence against the Appellant is insufficient as a matter of law and his conviction is against the manifest weight of the evidence[.]"
 {¶ 37} Dotson argues that his convictions are not supported by the weight and sufficiency of the evidence because there was no evidence of a firearm matching the description of the weapon likely used to kill Evans, thus sufficient evidence was not present to prove beyond a reasonable doubt that Dotson had a weapon on his person, discharged the weapon, and killed Evans. We disagree.
 {¶ 38} "A sufficiency of the evidence argument challenges whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law. State v. Thompkins,78 Ohio St.3d 380, 1997-Ohio-52[, 678 N.E.2d 541]. The proper test to apply to such an inquiry is the one set forth in paragraph two of the syllabus of State v. Jenks (1991), 61 Ohio St.3d 259,574 N.E.2d 492:
 {¶ 39} "`An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.'
 {¶ 40} "In reviewing a judgment to determine whether it is against the manifest weight of the evidence, an appellate court sits as a `thirteenth juror,' reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. State v.Thompkins [78 Ohio St.3d 380, 1997-Ohio-52,] 678 N.E.2d 541."State v. Reed, Champaign App. No. 2002-CA-30, 2003-Ohio-5413, at ¶¶ 12-14.
 {¶ 41} Dotson was convicted of one count of having weapons while under disability, involuntary manslaughter contrary to R.C.2903.04(A) and one count of involuntary manslaughter contrary to R.C. 2903.04(B), both with a firearm specification, and one count of tampering with evidence.
 {¶ 42} We begin by addressing the conviction for having a weapon while under a disability. R.C. 2923.13(A) states, in pertinent part, that "[u]nless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if * * * (3) The person is under indictment for or has been convicted of any offense involving the illegal possession, use, sale, administration, distribution, or trafficking in any drug of abuse[.]"
 {¶ 43} In this case, the parties stipulated to Dotson's conviction in a previous case, Case No. 94-CR-396, for trafficking in marijuana, a felony of the fourth degree. At trial, Dotson did not deny possessing the multiple weapons discovered in his residence on the night of the shooting. Accordingly, sufficient evidence was present to support his conviction, and no manifest miscarriage of justice was committed by his being convicted of such.
 {¶ 44} Dotson was also convicted on two counts of involuntary manslaughter with firearm specifications. R.C. 2903.04(A) states that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a felony." The underlying felony alleged by the State was having a weapon while under a disability, as discussed previously.
 {¶ 45} The second count of involuntary manslaughter falls under R.C. 2903.04(B), which similarly states that "[n]o person shall cause the death of another * * * as a proximate result of the offender's committing or attempting to commit a misdemeanor of any degree, a regulatory offense, or a minor misdemeanor other than a violation of any section contained in Title XLV of the Revised Code that is a minor misdemeanor and other than a violation of an ordinance of a municipal corporation that, regardless of the penalty set by ordinance for the violation, is substantially equivalent to any section contained in Title XLV of the Revised Code that is a minor misdemeanor." The underlying misdemeanor alleged by the State was assault, contrary to R.C.2903.13(B).
 {¶ 46} At trial, the jury heard testimony from Clark County Deputy Coroner Robert Stewart, M.D., that Evans died from a bullet wound to the head. David Eugene Green, Dotson's cousin, testified that Dotson had talked with him about purchasing a revolver prior to the shooting. Shortly thereafter, Green came into possession of a .32 caliber revolver and sold it to Dotson for $10 and a small bag of marijuana. Additionally, Green was present when Dotson sold the revolver following the shooting. Green reiterated another conversation whereby Dotson had confided that he had shot the revolver out of his second story window. Dotson stated that the bullet had richocheted and hit Evans, but that he had not intended to kill anyone. This testimony was consistent with Dr. Stewart's opinion that the wound was "in line" with being shot from a second story window.
 {¶ 47} While collecting evidence, Officer Charles Schreiber of the Springfield Police Department testified that two semiautomatic rifles were discovered under the water heater, and several other rifles were later discovered. Also found were a set of brass knuckles and "quite a bit" of ammunition. At least two of the rifles were found to be operable.
 {¶ 48} Gary Shaffer of the Miami Valley Regional Crime Lab tested the swabbings from Dotson's hands taken the night of the shooting, and concluded that gunshot residue had been present on Dotson's right and left palms and the back of Dotson's left hand. Furthermore, Joseph T. Morris tested Dotson's living room window curtains for gunshot residue, that window being the same window which Rothgeb testified he had viewed Dotson immediately after the shooting. Morris stated that he discovered a high amount of gunshot residue present, making it likely that someone had discharged a firearm from Dotson's northeast second-story window.
 {¶ 49} Upon careful review of the testimony and evidence presented at trial, we hold that the jury did not lose its way and create a manifest miscarriage of justice in convicting Dotson of the various offenses. We find there to be substantial, competent, credible evidence upon which the jury could base its decision that Dotson had a weapon on his person, that he discharged that weapon, and that he caused the death of Evans. The jury was free to accept or reject any or all of the testimony of the witnesses and assess the credibility of those witnesses. Dotson's version of the events leading up the shooting were somewhat inconsistent, in that he did not hear the officers at his door despite testimony that the officers had screamed at the base of the stairs for him to come and speak with them for an hour. The jury was free to believe the State's witnesses over Dotson's own testimony. Consequently, we conclude that Dotson's assertion that the State did not produce sufficient evidence to support a conviction is also without merit.
 {¶ 50} Accordingly, Dotson's fourth assignment of error is overruled.
 {¶ 51} Dotson's fifth assignment of error:
 {¶ 52} "Appellant was denied a fair trial due to the ineffective assistance of trial counsel[.]"
 {¶ 53} Dotson alleges numerous instances of ineffective assistance of trial counsel. We review these claims under the two prong analysis set forth in Strickland v. Washington (1984),466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, and adopted by the Supreme Court of Ohio in State v. Bradley (1989),42 Ohio St.3d 136, 538 N.E.2d 373.
 {¶ 54} Trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. Strickland, 466 U.S. at 688. To reverse a conviction based on ineffective assistance of counsel, it must be demonstrated that trial counsel's conduct fell below an objective standard of reasonableness and that his errors were serious enough to create a reasonable probability that, but for the errors, the result of the trial would have been different. Id. Deficient performance means that claimed errors were so serious that the defense attorney was not functioning as the "counsel" that the Sixth Amendment guarantees. State v. Cook (1992),65 Ohio St.3d 516, 524, 605 N.E.2d 70. Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel. Id. at 524-525.
 {¶ 55} Dotson argues that trial counsel was ineffective in failing to object to the issues as put forth in his first, second and third assignments of error. As we discussed supra, we do not find any serious instances of misconduct set forth therein, and none that caused prejudice to Dotson. Therefore, there is no reasonable probability that these failures to object affected the outcome of the trial.
 {¶ 56} We find no merit in Dotson's fifth assignment of error.
 {¶ 57} Dotson's sixth assignment of error:
 {¶ 58} "All of the errors committed at trial combined to deprive Appellant of a fair trial[.]"
 {¶ 59} In his final assignment of error, Dotson argues that even if the errors he has alleged above were harmless individually, their cumulative effect resulted in an unfair trial. It is true that separately harmless errors may violate a defendant's right to a fair trial when the errors are considered together. State v. Madrigal, 87 Ohio St.3d 378, 397,2000-Ohio-448, 721 N.E.2d 52. In order to find "cumulative error" present, we first must find that multiple errors were committed at trial. Id. at 398. We then must find a reasonable probability that the outcome of the trial would have been different but for the combination of the separately harmless errors. State v.Thomas, Clark App. No. 2000-CA-43, 2001-Ohio-1353. In our review of Dotson's previous assignments of error, however, we found only one such error committed by the trial court and it was harmless. Given that no multiple errors exist, we overrule Dotson's final assignment of error.
 {¶ 60} The judgment of the trial court is affirmed.
Brogan, J. and Wolff, J., concur.