[Cite as *State v. Shepherd*, 2020-Ohio-3915.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## HARDIN COUNTY

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  6-19-02

      v.

CORY BENJAMIN SHEPHERD,        O P I N I O N

      DEFENDANT-APPELLANT.

---

STATE OF OHIO,

      PLAINTIFF-APPELLEE,                CASE NO.  6-19-03

      v.

CORY BENJAMIN SHEPHERD,        O P I N I O N

      DEFENDANT-APPELLANT.

---

**Appeals from Hardin County Common Pleas Court**
**Trial Court Nos. 20162142 CRI and 20182105 CRI**

**Judgment Affirmed in Case No. 6-19-03 and**
**Appeal Dismissed in Case No. 6-19-02**

**Date of Decision:   August 3, 2020**

---

APPEARANCES:

    *April F. Campbell* **for Appellant**

    *Jason M. Miller* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Cory Benjamin Shepherd ("Shepherd"), appeals the February 11, 2019 judgment entries of sentence of the Hardin County Court of Common Pleas. For the reasons that follow, we affirm the judgment of the trial court in case number 20182105 CRI, assigned appellate case number 6-19-03, and dismiss case number 20162142 CRI, assigned appellate case number 6-19-02.

{¶2} On October 11, 2016, Shepherd (in case number 20162142 CRI) waived prosecution by indictment, and the State filed a bill of information, charging him with one count of failure to appear in violation R.C. 2937.29 and 2937.99(A), (B), a fourth-degree felony. (Case No. 20162142 CRI, Doc. Nos. 1, 2, 3). Shepherd pled guilty to the failure-to-appear charge in the bill of information, the trial court found him guilty, and he was sentenced to 12 months in prison, which he was ordered to serve consecutively to an 18-month prison term imposed in case number 20162082 CRI. (Case No. 20162142 CRI, Doc. Nos. 4, 5).

{¶3} On April 21, 2017, Shepherd (in case number 20162142 CRI) filed a motion for judicial release. (Case No. 20162142 CRI, Doc. No. 11). On May 3, 2017, the State filed a memorandum in opposition to Shepherd's motion for judicial release. (Case No. 20162142 CRI, Doc. No. 13). On May 22, 2017, Shepherd filed an application seeking admittance to the "Hardin County Recovery Court." (Case No. 20162142 CRI, Doc. No. 16). On September 6, 2017, the trial court granted

Shepherd's motion for judicial release under R.C. 2929.20, and placed him on judicial release with community-control sanctions, which included successful completion of the terms and conditions of the Recovery Court. (Case No. 20162142 CRI, Doc. No. 24). On September 11, 2018, after Shepherd failed to adhere to the terms and conditions of the Recovery Court, the trial court terminated Shepherd from the program. (Case No. 20162142 CRI, Doc. No. 28). Thereafter, on September 19, 2018, the State requested that the trial court revoke Shepherd's community control. (Case No. 20162142 CRI, Doc. No. 29).

{¶4} Also on September 19, 2018, the Hardin County Grand Jury indicted Shepherd (in case number 20182105 CRI) on two counts: Count One of tampering with evidence in violation of R.C. 2921.12(A)(1), a third-degree felony, and Count Two of criminal damaging or endangering in violation of R.C. 2909.06(A)(1), a second-degree misdemeanor. (Case No. 20182105 CRI, Doc. No. 1). Shepherd appeared for arraignment on October 4, 2018 and entered pleas of not guilty to the indictment. (Case No. 20182105 CRI, Doc. No. 6).

{¶5} After a probable-cause hearing on October 4, 2018, the trial court (in case number 20162142 CRI) proceeded to a final-revocation hearing on January 15, 2019 during which the trial court concluded that Shepherd violated the terms and conditions of his community control. (Case No. 20162142 CRI, Doc. Nos. 36, 44).

{¶6} Case number 20182105 CRI proceeded to a jury trial on February 5, 2019, and the jury found Shepherd guilty of the counts in the indictment. (Case No. 20182105 CRI, Doc. Nos. 22, 23). That same day, the trial court sentenced Shepherd to 24 months in prison on Count One and 90 days in jail on Count Two, and ordered that Shepherd serve the terms concurrently. (Case No. 20182105 CRI, Doc. No. 25). Also that day, the trial court (in case number 20162142 CRI) revoked Shepherd's judicial release and "sentenced him to 12 months in prison." (Case No. 20162142 CRI, Doc. No. 47). The trial court ordered that Shepherd serve the prison term imposed in case number 20162142 CRI consecutive to the concurrent prison term imposed in case number 20182105 CRI for an aggregate sentence of 36 months. (Case No. 20182105 CRI, Doc. No. 25). The trial court filed its judgment entries of sentence on February 7, 2019. (Case No. 20162142 CRI, Doc. No. 47); (Case No. 20182105 CRI, Doc. No. 25).

{¶7} Shepherd filed his notices of appeal on February 27, 2019 in case numbers 20162142 CRI and 20182105 CRI, which were consolidated for purposes of appeal. (Case No. 20162142 CRI, Doc. No. 50); (Case No. 20182105 CRI, Doc. No. 31). Because Shepherd does not assign any error as to case number 20162142 CRI, assigned appellate case number 6-19-02, we dismiss that appeal under App.R. 12 and 16.

{¶8} Shepherd raises five assignments of error as to case number 20182105 CRI, assigned appellate case number 6-19-03.  For ease of our discussion, we will begin by discussing Shepherd's first and fifth assignments of error together, followed by his fourth, second, and third assignments of error.

**Assignment of Error No. I**

**The State's evidence that Shepherd tampered with evidence by cutting of [sic] his GPS monitor was legally insufficient.**

**Assignment of Error No. V**

**The evidence manifestly weighed against convicting Shepherd of Tampering with Evidence.**

{¶9} In his first and fifth assignments of error, Shepherd argues that his tampering-with-evidence conviction is based on insufficient evidence and is against the manifest weight of the evidence.[1]  Specifically, in his first assignment of error, Shepherd argues that his tampering-with-evidence conviction is based on insufficient evidence because the State failed to present evidence (1) that a reasonable person in Shepherd's position would have known that an official investigation was in progress or was about to be or likely to be instituted or (2) that he removed the ankle monitor with the specific intention of impairing its availability or value as evidence in that investigation.  In his fifth assignment of error, Shepherd

---

[1] Shepherd does not challenge his criminal-damaging conviction.

specifically argues that the weight of the evidence shows that he did not tamper with evidence.

*Standard of Review*

{**¶10**} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997). Therefore, we address each legal concept individually.

{**¶11**} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.). *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19

("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶12} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

{¶13} We begin by addressing Shepherd's argument that his tampering-with-evidence conviction is based on insufficient evidence. *See State v. Velez*, 3d Dist. Putnam No. 12-13-10, 2014-Ohio-1788, ¶ 68, citing *State v. Wimmer*, 3d Dist.

Marion No. 9-98-46, 1999 WL 355190, *1 (Mar. 26, 1999). As an initial matter, the record reveals that Shepherd failed to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all the evidence. (*See* Feb. 5, 2019 Tr. at 78, 80-81, 95-96).

> In order to preserve the issue of sufficiency on appeal, this court has held that "[w]hen a defendant moves for acquittal at the close of the state's evidence and that motion is denied, the defendant waives any error which might have occurred in overruling the motion by proceeding to introduce evidence in his or her defense. In order to preserve a sufficiency of the evidence challenge on appeal once a defendant elects to present evidence on his behalf, the defendant must renew his Crim.R. 29 motion at the close of all the evidence."

*State v. Hurley*, 3d Dist. Hardin No. 6-13-02, 2014-Ohio-2716, ¶ 37, quoting *State v. Edwards*, 3d Dist. Marion No. 9-03-63, 2004-Ohio-4015, ¶ 6. Based on this court's precedent, Shepherd's failure to renew his Crim.R. 29(A) motion at the conclusion of his case-in-chief or at the conclusion of all evidence waived all but plain error on appeal. *Id.* at ¶ 37, citing *State v. Flory,* 3d Dist. Van Wert No. 15-04-18, 2005-Ohio-2251, citing *Edwards*.

{¶14} "However, '[w]hether a sufficiency of the evidence argument is reviewed under a prejudicial error standard or under a plain error standard is academic.'" *Id.* at ¶ 38, citing *Perrysburg v. Miller*, 153 Ohio App.3d 665, 2003-Ohio-4221, ¶ 57 (6th Dist.), quoting *State v. Brown,* 2d Dist. Montgomery No. 17891, 2000 WL 966161, *8 (July 14, 2000). "Regardless of the standard used, 'a conviction based on legally insufficient evidence constitutes a denial of due process,

and constitutes a manifest injustice.'" *Id.*, quoting *Thompkins* at 386-387. Accordingly, we will proceed to determine whether the State presented sufficient evidence to support Shepherd's convictions. *See id.*

{¶15} R.C. 2921.12 sets forth the elements of the offense of tampering with evidence and provides, in relevant part: "No person, knowing that an official proceeding or investigation is in progress, or is about to be or likely to be instituted, shall * * * [a]lter, destroy, conceal, or remove any record, document, or thing, with purpose to impair its value or availability as evidence in such proceeding or investigation * * *." R.C. 2921.12(A)(1). Thus, to establish that Shepherd tampered with evidence, the State had to show

> "(1) the knowledge of an official proceeding or investigation in progress or likely to be instituted; (2) the alteration, destruction, concealment, or removal of the potential evidence; and (3) the purpose of impairing the potential evidence's availability or value in such proceeding or investigation."

*State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, ¶ 11.

{¶16} Knowledge that an official proceeding or investigation is under way or is likely to be instituted is based on a reasonable person standard. *State v. Hicks*, 3d Dist. Union Nos. 14-07-26 and 14-07-31, 2008-Ohio-3600, ¶ 54, citing *State v. Mann*, 12th Dist. Clermont No. CA2006-05-035, 2007-Ohio-1555, ¶ 11. "The focus is on the intent of the defendant rather than the purpose of the criminal investigation." *Id.* at ¶ 54, citing *Mann* at ¶ 11.

{¶17} "R.C. 2921.12(A)(1) employs a 'purposely' culpability standard." *State v. Rock*, 3d Dist. Seneca No. 13-13-38, 2014-Ohio-1786, ¶ 13, citing *State v. Skorvanek*, 182 Ohio App.3d 615, 2009-Ohio-1709, ¶ 21 (9th Dist.), citing *State v. Jones*, 9th Dist. Summit No. 23234, 2006-Ohio-6963, ¶ 13-15. "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature." R.C. 2901.22(A). *See Rock* at ¶ 13, citing *Skorvanek* at ¶ 21. *See also State v. Holtvogt*, 2d Dist. Montgomery No. 24748, 2012-Ohio-2233, ¶ 21. To determine whether a defendant acted purposely, his or her intent may be inferred from the surrounding facts and circumstances. *See State v. Elliot*, 3d Dist. Seneca No. 13-12-43, 2013-Ohio-2386, ¶ 27, citing *State v. Huffman*, 131 Ohio St. 27, 28 (1936); *Rock* at ¶ 13, citing *Skorvanek* at ¶ 21, citing *State v. Patel*, 9th Dist. Summit No. 24030, 2008-Ohio-4693, ¶ 34.

{¶18} Therefore, the relevant inquiries in this case are whether the evidence, when viewed in a light most favorable to the prosecution, is such that any rational trier of fact could have found that: (1) a reasonable person in Shepherd's position would have known that an official investigation was in progress or was about to be or likely to be instituted; (2) Shepherd altered, destroyed, concealed, or removed the ankle monitor by cutting it off; and (3) Shepherd removed the ankle monitor with

the specific intention of impairing its availability or value as potential evidence in the investigation. *See Straley* at ¶ 11; *Rock* at ¶ 13, citing *Hicks* at ¶ 54, *Skorvanek* at ¶ 21, and R.C. 2921.12(A)(1). Because they are the only elements that Shepherd challenges on appeal, we will review the sufficiency of the evidence supporting only (1) whether a reasonable person in Shepherd's position would have known that an official investigation was in progress or was about to be or likely to be instituted at the time he removed the ankle monitor and (2) whether Shepherd removed the ankle with the specific intention of impairing its availability or value as potential evidence in that investigation.

{¶19} Viewing the evidence in a light most favorable to the prosecution, we conclude that Shepherd's tampering-with-evidence conviction is based on sufficient evidence. First, a rational trier of fact could have found that a reasonable person in Shepherd's position would have known that an investigation was under way at the time he removed the ankle monitor. That is, an offender who is subject to community control is not only the subject of an ongoing investigation, but that offender also has knowledge of that investigation. *See State v. Thomas*, 5th Dist. Licking No. 14-CA-90, 2015-Ohio-2116, ¶ 15 (concluding that the defendant was "subject of an official investigation as part of his ongoing probation and supervision").

-11-

{¶20} Here, Shepherd signed agreements to abide by the terms and conditions of his community control, which included his agreement to abide by the terms and conditions of the Recovery Court. (*See* Feb. 5, 2019 Tr. at 11-13, 14-15, 18); (State's Exs. 1, 2, 3). As part of his acceptance into the Recovery Court, Shepherd was subject to (between one and five) mandatory-drug screenings each week. (State's Ex. 2). *See Thomas* at ¶ 15. Moreover, as a participant in the Recovery Court, Shepherd was subject to additional sanctions for failing to follow the terms and conditions of the Recovery Court. (Feb. 5, 2019 Tr. at 18).

{¶21} Because Shepherd violated the terms and conditions of the Recovery Court by providing an adulterated-urine sample, Shepherd "was placed on house arrest" "with a GPS ankle monitor." (*Id.* at 18-19). Shepherd signed an additional agreement acknowledging the terms and conditions associated with the ankle monitor, which included a specific agreement not to "remove" or "tamper" with the monitor. (*Id.* at 22-26); (State's Ex. 4). *Compare State v. Wells*, 4th Dist. Lawrence No. 18CA23, 2019-Ohio-3799, ¶ 16 (concluding that Wells's tampering-with-evidence conviction for removing his ankle monitor was based on sufficient evidence because, in part, "Wells read and signed an agreement" which informed him that "it was a violation to tamper with the monitor"). Moreover, Aaron J.J. McPherson ("McPherson"), the Hardin County Common Pleas Court Chief Probation Officer and Shepherd's probation officer, testified that, based on

Shepherd's violation of the terms and conditions of the Recovery Court, Shepherd's conduct was not only the subject of an ongoing investigation into his continued participation in the Recovery Court, but as part of the ongoing supervision of his community control. (Feb. 5, 2019 Tr. at 32, 37-38).

{¶22} Second, a rational trier of fact could have found that Shepherd removed the ankle monitor with the specific intention of impairing its availability or value as evidence in the investigation into his compliance with the terms and conditions of his community-control sanctions, including the investigation into his continued participation in the Recovery Court. Importantly, on the day that he removed his ankle monitor, Shepherd was ordered to report to the Recovery Court at 1:00 p.m. after he tested positive for "opiates and gabapentin" earlier that day. (*Id.* at 20); (State's Ex. 5). However, knowing that his positive-drug test would result in additional sanctions from the Recovery Court, "he cut the ankle bracelet off." (Feb. 5, 2019 Tr. at 21, 31-32); (State's Ex. 2). Indeed, McPherson testified that Shepherd admitted that "he panicked due to a positive screen in the morning," removed the ankle monitor, and then left his residence to purchase heroin. (Feb. 5, 2019 Tr.at 31-32). Accordingly, the evidence presented by the state sufficiently demonstrates that Shepherd removed the ankle monitor with the specific intention of impairing its availability or value as evidence in the investigation.

**{¶23}** For these reasons, we conclude that there is sufficient evidence that a reasonable person in Shepherd's position would have known that an investigation was under way at the time he removed the ankle monitor and that Shepherd removed the ankle monitor with the specific intention of impairing its value or availability as evidence in the investigation. Therefore, Shepherd's tampering-with-evidence conviction is based on sufficient evidence.

*Manifest Weight of the Evidence*

**{¶24}** Having concluded that Shepherd's tampering-with-evidence conviction is based on sufficient evidence, we next address Shepherd's argument that his tampering-with-evidence conviction is against the manifest weight of the evidence. *Velez*, 2014-Ohio-1788, at ¶ 76. Here, Shepherd makes many of the same arguments that he makes in his sufficiency-of-the-evidence assignment of error. Specifically, he argues that the weight of the evidence reflects that "the ankle monitor had no value in relation to a determination of whether Shepherd failed a drug screen or was on probation." (Appellant's Brief at 18). However, the evidence that we summarized in our sufficiency-of-the-evidence analysis supporting Shepherd's tampering-with-evidence conviction is weightier than the evidence that he did not tamper with evidence.

**{¶25}** Notably, Shepherd fails to acknowledge that he was not only the subject of an ongoing investigation as the result of his community-control sanctions,

but that he knew that he was the subject of that investigation. *See Thomas*, 2015-Ohio-2116, at ¶ 15. Accordingly, as part of the ongoing investigation into Shepherd's adherence to his community-control sanctions, which included adherence to the terms and conditions of the Recovery Court—one of which being to not only wear the ankle monitor but to not tamper with it or remove it—the weight of the evidence reflects that Shepherd's wearing of the ankle monitor was a fact of value to that ongoing investigation. Therefore, we cannot say that the trier of fact clearly lost its way and created such a manifest miscarriage of justice that Shepherd's conviction must be reversed and a new trial ordered. Thus, Shepherd's tampering-with-evidence conviction is not against the manifest weight of the evidence.

{¶26} Shepherd's first and fifth assignments of error are overruled.

**Assignment of Error No. IV**

**The plain error standard does not apply to the State's Confrontation Clause violation. Even if it did, it was reversible error for the State to use surrogate testimony under that standard.**

{¶27} In his fourth assignment of error, Shepherd argues that the admission of evidence of his failed-drug test, his ankle-monitor contract, and the installation of the ankle monitor violated his right under the Confrontation Clause to confront witnesses offered against him. In particular, Shepherd argues that "McPherson

provided substitute testimony for Probation Officer Henderson in violation of Shepherd's confrontation right about substitutive facts." (Appellant's Brief at 14).

*Standard of Review*

{¶28} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980). "However, we review de novo evidentiary rulings that implicate the Confrontation Clause." *State v. McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, ¶ 97. "De novo review is independent, without deference to the lower court's decision." *State v. Hudson*, 3d Dist. Marion No. 9-12-38, 2013-Ohio-647, ¶ 27, citing *Ohio Bell Tel. Co. v. Pub. Util. Comm. of Ohio*, 64 Ohio St.3d 145, 147 (1992).

*Analysis*

{¶29} The Confrontation Clause to the Sixth Amendment of the United States Constitution, made applicable to the states by the Fourteenth Amendment, provides that "'[i]n all criminal prosecutions, the accused shall enjoy the right * * * to be confronted with the witnesses against him * * *.'" *Crawford v. Washington*, 541 U.S. 36, 42, 124 S.Ct. 1354 (2004), quoting the Confrontation

Clause. *See also State v. Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, ¶ 34; *State*

*v. McNeal*, 3d Dist. Allen No. 1-01-158, 2002-Ohio-2981, ¶ 43, fn. 13.

> The United States Supreme Court has interpreted [the Sixth Amendment right to confrontation] to mean that admission of an out-of-court statement of a witness who does not appear at trial is prohibited by the Confrontation Clause if the statement is testimonial unless the witness is unavailable and the defendant has had a prior opportunity to cross-examine the witness.

*Maxwell* at ¶ 34, citing *Crawford* at 53-54. The United States Supreme Court "did

not define the word 'testimonial' but stated that the core class of statements

implicated by the Confrontation Clause includes statements 'made under

circumstances which would lead an objective witness reasonably to believe that the

statement would be available for use at a later trial.'" *Id.* at ¶ 35, quoting *Crawford*

at 52.

{¶30} "Only testimonial hearsay implicates the Confrontation Clause."

*McKelton* at ¶ 185. "'[T]estimonial statements are those made for "a primary

purpose of creating an out-of-court substitute for trial testimony."'" *Id.*, quoting

*Maxwell* at ¶ 40, quoting *Michigan v. Bryant*, 562 U.S. 344, 358, 131 S.Ct. 1143

(2011). That is, "[t]o rank as 'testimonial,' a statement must have a 'primary

purpose' of 'establish[ing] or prov[ing] past events potentially relevant to later

criminal prosecution.'" *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S.Ct. 2705,

2714 (2011), fn. 6, quoting *Davis v. Washington*, 547 U.S. 813, 822, 126 S.Ct. 2266

(2006). "The key issue is what constitutes a testimonial statement: 'It is the

testimonial character of the statement that separates it from other hearsay that, while subject to traditional limitations upon hearsay evidence, is not subject to the Confrontation Clause.'" *State v. Hood*, 135 Ohio St.3d 137, 2012-Ohio-6208, ¶ 33, quoting *Davis* at 821. Nevertheless, "[t]here is also no dispute that the Confrontation Clause 'does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted.'" *State v. Ricks*, 136 Ohio St.3d 356, 2013-Ohio-3712, ¶ 18, quoting *Crawford* at 59, and citing *Williams v. Illinois*, 567 U.S. 50, 57-58, 132 S.Ct. 2221 (2012).

{¶31} In this case, Shepherd argues that the admission of evidence of his failed-drug test, his ankle-monitor contract, and the installation of the ankle monitor absent his ability to examine Probation Officer Henderson violated his right under the Confrontation Clause to confront witnesses offered against him. As an initial matter, because Shepherd failed to raise the Confrontation Clause issue to the trial court, he waived all but plain error on appeal. *McKelton* at ¶ 191; *State v. Arnold*, 126 Ohio St.3d 290, 2010-Ohio-2742, ¶ 65. "Crim.R. 52(B) governs plain-error review in criminal cases." *State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 55, citing *State v. Risner*, 73 Ohio App.3d 19, 24 (3d Dist.1991). "A court recognizes plain error with the utmost caution, under exceptional circumstances, and only to prevent a miscarriage of justice." *State v. Smith*, 3d Dist. Hardin No. 6-1414, 2015-Ohio-2977, ¶ 63, citing *State v. Saleh*, 10th Dist. Franklin

No. 07AP-431, 2009-Ohio-1542, ¶ 68. Under plain-error review, "[w]e may reverse only when the record is clear that defendant would not have been convicted in the absence of the improper conduct." *Id.*, citing *State v. Williams*, 79 Ohio St.3d 1, 12 (1997).

**{¶32}** Because Shepherd does not challenge the admissibility of the drug-test evidence, the ankle-monitor contract, or the ankle-monitor installation, we will address only whether the admission of that evidence violated Shepherd's Sixth Amendment rights. We will begin by addressing whether the Confrontation Clause applies to the drug-test evidence or the ankle-monitor contract. Documents that are "neither prepared for the primary purpose of accusing a targeted individual nor prepared for the primary purpose of providing evidence in a criminal trial [are] nontestimonial, and [their] admission into evidence at trial under Evid.R. 803(6) as a business record does not violate a defendant's Sixth Amendment confrontation rights." *Maxwell*, 139 Ohio St.3d 12, 2014-Ohio-1019, at syllabus. Generally, business records are nontestimonial because they are prepared in the course of a regularly conducted business activity—that is, business records are typically not prepared for litigation. *Hood* at ¶ 34. *See also Crawford* at 56; *State v. Adams*, 146 Ohio St.3d 232, 2016-Ohio-3043, ¶ 4.

> Whether a business record meets a hearsay exception is immaterial in regard to the Confrontation Clause; it is the nontestimonial character of the record that removes it from the purview of the Confrontation Clause: "Business and public records are generally admissible absent

confrontation not because they qualify under an exception to the hearsay rules, but because—having been created for the administration of an entity's affairs and not for the purpose of establishing or proving some fact at trial—they are not testimonial."

*Hood* at ¶ 34, quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324, 129 S.Ct. 2527 (2009).

**{¶33}** Here, the drug-test report and the ankle-monitor contract are nontestimonial business records and their admission did not impinge Shepherd's confrontation rights. *See Maxwell* at ¶ 54; *Hood* at ¶ 39. That is, each document was prepared in the ordinary course of the regular performance of the probation department with the primary purpose of documenting the probationer's adherence to the terms and conditions of his or her supervision. *See State v. McDargh*, 2d Dist. Clark No. 2015-CA-27, 2016-Ohio-1132, ¶ 13 ("A probation officer may introduce a business record maintained in the regular course of business by the Probation Department, by laying a proper foundation in accordance with Evid. R. 803(6)."). Indeed, McPherson described Shepherd's drug-test report as a document that the probation department generates and logs into its computer system with respect to every probationer's routine-drug testing. (*See* Feb. 5, 2019 Tr. at 33-34); (State's Ex. 5). Likewise, McPherson identified the ankle-monitor contract as a template that the probation office uses "every time a participant comes into Recovery Court [and] they are placed on an ankle monitor." (Feb. 5, 2019 Tr. at 23- 24); (State's Ex. 4). Moreover, McPherson indicated that the failed-drug-test report and ankle

monitor contract are part of the probation file that the department maintained for Shepherd.  (Feb. 5, 2019 Tr. at 24, 35).

{¶34} Further, neither document was prepared for the primary purpose of targeting Shepherd or for the primary purpose of providing evidence in a criminal trial for tampering with evidence.  *See Maxwell* at syllabus; *State v. Bump*, 3d Dist. Logan No. 8-12-04, 2013-Ohio-1006, ¶ 104.  The drug-test evidence was not introduced into evidence for the purpose of proving the truth of the matter asserted. Rather, the drug-test evidence was related by McPherson solely for the purpose of explaining Shepherd's intention of impairing the ankle-monitor's availability or value as evidence in the investigation into whether he was adhering to the terms and conditions of his community control.  *See Maxwell* at ¶ 42, citing *Williams*, 567 U.S. at 79.  *See also Bump* at ¶ 104.  Likewise, the ankle-monitor contract was offered for the purpose of explaining Shepherd's knowledge of the ongoing investigation into his adherence to the terms and conditions of his community control, not for its truth.  *See Maxwell* at ¶ 42, citing *Williams* at 79.  Furthermore, the drug-test report and ankle-monitor contract were not prepared with the primary purpose to implicate Shepherd as guilty of tampering with evidence.  *See id*.; *Bump* at ¶ 104.  As a result, we conclude that the admission of the drug-test evidence and the ankle-monitor contract in this case did not violate the Confrontation Clause.  *Bump* at ¶ 104.

**{¶35}** Finally, the admission of the ankle-monitor-installation evidence did not violate Shepherd's Sixth Amendment rights because that evidence is not hearsay evidence. "If testimony qualifies as nonhearsay, it does not implicate the Confrontation Clause." *McKelton*, 148 Ohio St.3d 261, 2016-Ohio-5735, at ¶ 186. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Evid.R. 801(C). "A 'statement' is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by the person as an assertion." Evid.R. 801(A). Here, McPherson's testimony concerning how the ankle monitor became affixed to Shepherd's person does not constitute an out-of-court statement because the testimony did not reference an oral or written assertion or nonverbal conduct intended to be an assertion. *See State v. Carruth*, 2d Dist. Montgomery No. 19997, 2004-Ohio-2317, ¶ 57; *State v. Betts*, 4th Dist. Pickaway No. 02CA26, 2004-Ohio-818, ¶ 32; *State v. Groves*, 6th Dist. Wood No. WD-13-065, 2014-Ohio-4337, ¶ 6. Rather, (notwithstanding McPherson's testimony that he did not affix it to Shepherd's person) McPherson identified—based on his personal knowledge—the ankle monitor as the ankle monitor that was affixed to Shepherd's person. (*See* Feb. 5, 2019 Tr. 36). Accordingly, there is no Confrontation-Clause violation.

**{¶36}** For these reasons, it was not error, let alone plain error, for the trial court to admit evidence of Shepherd's failed-drug test, Shepherd's ankle-monitor

contract, or the installation of the ankle monitor. Shepherd's fourth assignment of error is overruled.

**Assignment of Error No. II**

**Shepherd's convictions should be reversed because his trial counsel was deficient at trial, with resulting prejudice.**

{¶37} In his second assignment of error, Shepherd argues that his trial counsel was ineffective for failing to object to: (1) the admission of inadmissible "other acts" evidence under Evid.R. 404(B); (2) the admission of testimony conveying legal conclusions in violation of Evid.R. 701; and (3) the admission of testimony in violation of the Confrontation Clause.

*Standard of Review*

{¶38} A defendant asserting a claim of ineffective assistance of counsel must establish: (1) the counsel's performance was deficient or unreasonable under the circumstances; and (2) the deficient performance prejudiced the defendant. *State v. Kole*, 92 Ohio St.3d 303, 306 (2001), citing *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052 (1984). In order to show counsel's conduct was deficient or unreasonable, the defendant must overcome the presumption that counsel provided competent representation and must show that counsel's actions were not trial strategies prompted by reasonable professional judgment. *Strickland* at 687. Counsel is entitled to a strong presumption that all decisions fall within the wide range of reasonable professional assistance. *State v. Sallie*, 81 Ohio St.3d 673, 675

(1998). Tactical or strategic trial decisions, even if unsuccessful, do not generally constitute ineffective assistance. *State v. Carter*, 72 Ohio St.3d 545, 558 (1995). Rather, the errors complained of must amount to a substantial violation of counsel's essential duties to his client. *See State v. Bradley*, 42 Ohio St. 3d 136, 141-142 (1989), quoting *State v. Lytle*, 48 Ohio St.2d 391, 396 (1976), *vacated in part on other grounds*, 438 U.S. 910, 98 S.Ct. 3135 (1978).

{¶39} "Prejudice results when 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *State v. Liles*, 3d Dist. Allen No. 1-13-04, 2014-Ohio-259, ¶ 48, quoting *Bradley* at 142, citing *Strickland* at 691. "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.*, quoting *Bradley* at 142 and citing *Strickland* at 694.

*Analysis*

{¶40} On appeal, Shepherd argues that his trial counsel was ineffective for failing to object to: (1) the admission of inadmissible "other acts" evidence under Evid.R. 404(B); (2) the admission of testimony conveying legal conclusions in violation of Evid.R. 701; and (3) the admission of testimony in violation of the Confrontation Clause. "The 'failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel.'" *Liles* at ¶ 49, quoting *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, ¶ 139, citing *State v. Holloway*, 38 Ohio St.3d

239, 244 (1988). "To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to his client and, second, that he was materially prejudiced by counsel's ineffectiveness." *Holloway* at 244, citing *Lytle* at 396-397 and *Strickland* at 668. "Because 'objections tend to disrupt the flow of a trial, and are considered technical and bothersome by the fact-finder,' competent counsel may reasonably hesitate to object in the jury's presence." *State v. Campbell*, 69 Ohio St.3d 38, 53 (1994), quoting Jacobs, *Ohio Evidence*, at iii-iv (1989).

**{¶41}** First, Shepherd argues that his trial counsel erred by allowing "the State to saturate this trial with evidence of acts that [he] was not at all charged with in this case: evidence of prior convictions; drug addictions; failed drug screenings; the type of drugs Shepherd was on during probation; and the fact that he was on house arrest." (Appellant's Brief at 10). Specifically, Shepherd argues that this evidence was impermissible character evidence under Evid.R. 404(B).

**{¶42}** "'Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith."'" *Bagley*, 2014-Ohio-1787, at ¶ 56, quoting *State v. May*, 3d Dist. Logan No. 8-11-19, 2012-Ohio-5128, ¶ 69, quoting Evid.R. 404(B). *See also State v. Wendel*, 3d Dist. Union No. 14-16-08, 2016-Ohio-7915, ¶ 21. "'However, there are exceptions to the general rule: "It may, however, be

admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."'" *Bagley* at ¶ 56, quoting *May* at ¶ 69, quoting Evid.R. 404(B). *See also* R.C. 2945.59. "'The list of acceptable reasons for admitting testimony of prior bad acts into evidence is non-exhaustive.'" *Bagley* at ¶ 56, quoting *State v. Persohn*, 7th Dist. Columbiana No. 11 CO 37, 2012-Ohio-6091, ¶ 23, citing *State v. Melton*, 11th Dist. Lake No. 2009-L-078, 2010-Ohio-1278, ¶ 78, and citing *State v. Faye*, 3d Dist. Wyandot Nos. 16-99-08 and 16-99-09, 2000 WL 566741, *4 (May 4, 2000).

{¶43} "In *State v. Williams*, the Supreme Court of Ohio set forth the three-step analysis trial courts should conduct in determining whether "other acts" evidence is admissible under Evid.R. 404(B)." *Id.* at ¶ 57, citing 134 Ohio St.3d 521, 2012-Ohio-5695, ¶ 19-20. "'The first step is to consider whether the other acts evidence is relevant to making any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence.'" *Id.*, quoting *Williams* at ¶ 20, citing Evid.R. 401. "'The next step is to consider whether evidence of the other crimes, wrongs, or acts is presented to prove the character of the accused in order to show activity in conformity therewith or whether the other acts evidence is presented for a legitimate purpose, such as those stated in Evid.R. 404(B).'" *Id.*, quoting *Williams* at ¶ 20. "'The third step is to consider whether the

-26-

probative value of the other acts evidence is substantially outweighed by the danger of unfair prejudice.'" *Id.*, quoting *Williams* at ¶ 20, citing Evid.R. 403.

**{¶44}** The evidence of which Shepherd complains was admissible for a purpose other than showing that he acted in conformity with the character or reputation suggested by that evidence. *See State v. Costell*, 3d Dist. Union No. 14-15-11, 2016-Ohio-3386, ¶ 123, citing *State v. Dotson*, 2d Dist. Clark No.2003 CA 34, 2004-Ohio-6875, ¶ 16. Specifically, the evidence of which he complains was relevant to proving the elements of the charges facing Shepherd. *See id.*, citing *Williams* at ¶ 7. That is, the State offered that evidence (as we described in our sufficiency-of-the-evidence analysis) to prove that a reasonable person in Shepherd's position would have known that an investigation was under way at the time he removed the ankle monitor and that Shepherd removed the ankle monitor with the specific intention of impairing its availability or value as evidence in that investigation. Specifically, that evidence was introduced to prove Shepherd's knowledge of the investigation that was underway into his compliance with the terms and conditions of his community control. Likewise, that evidence was introduced to prove Shepherd's motive for removing the ankle monitor. Accordingly, the evidence at issue is not improper character evidence. Therefore, Shepherd's trial counsel cannot be ineffective for failing to object to the admission of that evidence. *See State v. Teal*, 6th Dist. Lucas No. L-15-1280, 2017-Ohio-

7202, ¶ 31, citing *State v. Curtis*, 9th Dist. Medina No. 04CA0067-M, 2005-Ohio-2143, ¶ 23.

{¶45} Next, Shepherd contends that his trial counsel erred by permitting McPherson and Brent Leonard ("Leonard"), Vice President of Sales and Marketing and Business Development at Ohio Alcohol Monitoring Systems, to conclude that Shepherd tampered with evidence by removing his ankle monitor.  In particular, he contends that McPherson's and Leonard's testimony improperly conveyed legal conclusions in violation of Evid.R. 701.

{¶46} Testimony in the form of an opinion "is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact."  Evid.R. 704.  *See State v. Bond*, 10th Dist. Franklin No. 11AP-403, 2011-Ohio-6828, ¶ 15. However, opinion testimony must be admissible under Evid.R. 701 or 702.  *Bond* at ¶ 15.  Evid.R. 701, which governs the admission of opinion testimony by a lay witness, permits "a witness who has not been qualified as an expert may testify as to opinions that are '(1) rationally based on the perception of the witness, and (2) helpful to a clear understanding of the witness' testimony or the determination of a fact in issue.'"  *State v. Neil*, 10th Dist. Franklin No. 14AP-981, 2016-Ohio-4762, ¶ 71, quoting Evid.R. 701.

{¶47} In this case, McPherson's and Leonard's testimony was based on their personal observations and was helpful to the jury's understanding that Shepherd

removed the ankle monitor without permission in contravention of his ankle-monitor contract. *Compare State v. Crome*, 10th Dist. Franklin No. 96APA11-1600, 1997 WL 599155, *2-3 (Sept. 25, 1997) (concluding that the witness's "lay opinion that the transaction was a theft offense" was admissible under Evid.R. 701 because it was based on her own perception and "helpful to the jury's understanding of the facts"). Indeed, read in context, McPherson's testimony that he "received a tamper with evidence" alert was describing for the jury a message that he received alerting him that Shepherd's ankle monitor was no longer affixed to his person. (*See* Feb. 5, 2019 Tr. at 27-28). Specifically, McPherson was relating to the jury that Shepherd violated the term of his ankle-monitor contract prohibiting him from "tampering" with the device by impermissibly removing the ankle monitor as well the action that he took in response to the alert. (*See* State's Ex. 4).

{¶48} Likewise, in discussing a "tampering notification," Leonard was explaining to the jury the types of alerts that are sent to the person who is tasked with monitoring the ankle-monitor device—here, McPherson. (*See* Feb. 5, 2019 Tr. at 59, 69). Precisely, Leonard told the jury that individuals in McPherson's position are not only notified that a violation occurred but that person is also notified as to the type of violation that occurred—in this case, a "tampering" violation. Therefore, because we conclude that McPherson's and Leonard's testimony was admissible under Evid.R. 701, Shepherd's trial counsel was not ineffective for failing to object

to the testimony. *See State v. Tillman*, 6th Dist. Fulton No. F-11-006, 2012-Ohio-5265, ¶ 25.

**{¶49}** Finally, based on our resolution of Shepherd's fourth assignment of error, Shepherd's trial counsel cannot be ineffective for failing to object to the Confrontation Clause issues relative to the drug-test evidence, ankle-monitor contract, or the installation of the ankle monitor. *See State v. Douglas*, 3d Dist. Marion No. 9-18-19, 2019-Ohio-2067, ¶ 42.

**{¶50}** Shepherd's second assignment of error is overruled.

### Assignment of Error No. III

**Because of cumulative error, Shepherd's right to a fair trial was denied.**

**{¶51}** In his third assignment of error, Shepherd argues that the cumulative effect of the trial court's errors denied him a fair trial. Specifically, Shepherd argues that the cumulative effect of the errors that he alleged in his first, second, fourth, and fifth assignments of error deprived him of a fair trial.

*Standard of Review*

**{¶52}** "Under [the] doctrine of cumulative error, a conviction will be reversed when the cumulative effect of errors in a trial deprives a defendant of a fair trial even though each of the numerous instances of trial court error does not individually constitute cause for reversal." *State v. Spencer*, 3d Dist. Marion No. 9-13-50, 2015-Ohio-52, ¶ 83, citing *State v. Powell*, 132 Ohio St.3d 233, 2012-Ohio-

2577, ¶ 222-224 and *State v. Garner*, 74 Ohio St.3d 49, 64 (1995). "To find cumulative error, a court must first find multiple errors committed at trial and determine that there is a reasonable probability that the outcome below would have been different but for the combination of the harmless errors." *State v. Stober*, 3d Dist. Putnam No. 12-13-13, 2014-Ohio-5629, ¶ 15, quoting *In re J.M.*, 3d. Dist. Putnam No. 12-11-06, 2012-Ohio-1467, ¶ 36.

*Analysis*

{¶53} Because we found no error as alleged by Shepherd in his first, second, fourth, or fifth assignments of error, the doctrine of cumulative error does not apply. *State v. Bertuzzi*, 3d Dist. Marion No. 9-13-12, 2014-Ohio-5093, ¶ 110.

{¶54} Shepherd's third assignment of error is overruled.

{¶55} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court in case number 20182105 CRI, assigned appellate case number 6-19-03.

**Judgment Affirmed in Case No. 6-19-03 and**
**Appeal Dismissed in Case No. 6-19-02**

**PRESTON, J., concurs.**

**/jlr**

Case No. 6-19-02, 6-19-03

**WILLAMOWSKI, J., dissents.**

{¶56} I respectfully dissent from the majority opinion because I do not believe that Shepherd's conviction for tampering with evidence is supported by sufficient evidence. In order to prove the crime of tampering with evidence, the State must establish that the defendant "[1] kn[ew] that an official proceeding or investigation [was] in progress, or [was] about to be or [was] likely to be instituted" and "alter[ed], destroy[ed], conceal[ed] or remove[d] any record, document, or thing, [3] with purpose to impair its value or availability as evidence in such proceeding or investigation." R.C. 2921.12(A)(1).

{¶57} The Supreme Court of Ohio has held that "R.C. 2921.12(A)(1) requires proof that the defendant intended to impair the value or availability of evidence that related to an existing or likely official investigation or proceeding." *State v. Straley*, 139 Ohio St.3d 339, 2014-Ohio-2139, 11 N.E.3d 1175, paragraph one of the syllabus. Further, "the evidence tampered with must have some relevance to an ongoing or likely investigation to support a tampering charge * * *." *State v. Barry*, 145 Ohio St.3d 354, 2015-Ohio-5449, 49 N.E.3d 1248, ¶ 21.

{¶58} The State argues that Shepherd tampered with evidence when he cut off an ankle monitor that provided real-time GPS data as to his precise location. However, a review of the record reveals (1) that there is no indication that Shepherd tampered with evidence that was relevant to an official investigation, an official

proceeding, or a likely investigation and (2) that there is no indication that Shepherd acted purposefully to impair the value or availability of evidence that was relevant to an official investigation, an official proceeding, or a likely investigation.

{¶59} At the time of the alleged offense, Shepherd was on community control. Ex. 1. The majority opinion characterizes community control itself as an ongoing investigation. Majority, *supra*, at ¶ 19. However, community control is defined, in part, as "[a] criminal sentence whose terms include intensive and strict supervision of an offender in the community * * *." Black's Law Dictionary (11th Ed. 2019). Thus, community control is a sanction that involves supervision and may involve periodic investigations into a person's activities. But community control is not itself a continuous or ongoing investigation.

{¶60} On August 20, 2018, the trial court placed Shepherd under house arrest and required him to wear an ankle monitor with a GPS unit. Tr. 18-19. Ex. 1. Data regarding Shepherd's current location was uploaded from this GPS unit to a computer system managed by Ohio Alcohol Monitoring Systems, Inc. ("OAMS"). Tr. 57. Ex. 4. Shepherd's probation officer had access to this GPS data on the OAMS computer system. Tr. 57. Shepherd also had to submit to regular drug screens. Tr. 18. Ex. 1. The ankle monitor, on the one hand, was part of Shepherd's ongoing supervision while he was on community control. The regular drug screens,

on the other hand, were arguably periodic official investigations into whether he had ingested prohibited substances.

{¶61} On the morning of September 4, 2018, Shepherd participated in one of these periodic investigations. Tr. 34, 40. While this drug screen was arguably an official investigation, Shepherd did not tamper with any evidence that was relevant to this investigation.

> **'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.**

Evid.R. 401. The purpose of this drug screen was to determine whether Shepherd had any prohibited substances in his system. Tr. 20.

{¶62} However, there is no evidence in the record that suggests that the process of screening Shepherd for prohibited substances involved the ankle monitor in any way. The testimony at trial indicates that the ankle monitor did not test Shepherd for the presence of prohibited substances in his system. Tr. 41, 65. Rather, Shepherd participated in the drug screen by submitting a urine sample to the authorities. Tr. 34, 40. The authorities then tested this sample and concluded that Shepherd had opiates present in his system. Tr. 20, 40.

{¶63} Even if the ankle monitor had contained evidence that was relevant to this drug screen, Shepherd did not cut off the ankle monitor until after this investigation had concluded that he had prohibited substances in his system. Tr. 21,

27, 40. Thus, the subsequent act of cutting off the ankle monitor did not deprive the completed drug screen of any relevant evidence. Further, since there is no evidence that the ankle monitor was a part of the drug screening process, there is no evidence that the act of cutting off this ankle monitor compromised evidence that had been previously produced in the drug screening process.

**{¶64}** After Shepherd tested positive for opiates, a hearing in recovery court was scheduled for 1:00 P.M. on September 4, 2018. Tr. 20. Under R.C. 2921.01(D), an "official proceeding" is

> **any proceeding before a legislative, judicial, administrative, or other governmental agency or official authorized to take evidence under oath, and includes any proceeding before a referee, hearing examiner, commissioner, notary, or other person taking testimony or a deposition in connection with an official proceeding.**

R.C. 2921.01(D). Thus, this scheduled hearing in recovery court was an "official proceeding" within the meaning of R.C. 2921.01(D).

**{¶65}** Within roughly twenty minutes of being notified that he needed to appear for this hearing, Shepherd cut off his ankle monitor at his residence. Tr. 21. While the recovery court hearing was an official proceeding, the ankle monitor itself was not evidence that was relevant to this hearing. The hearing was scheduled to inquire into the fact that Shepherd had tested positive for opiates. Tr. 20. The State has not demonstrated how the intact ankle monitor itself could have been used at

that hearing as evidence that would have tended to establish whether Shepherd had previously used opiates while he was under house arrest.

{¶66} Certainly, GPS data regarding Shepherd's historical movements could have provided information as to where Shepherd may have obtained any prohibited substances that he may have previously ingested. *See* Tr. 49. Thus, the GPS data that documented Shepherd's movements during the timeframe in which he was alleged to have used opiates was evidence that was relevant to the official proceeding in the recovery court. However, while there is evidence in the record that Shepherd damaged the ankle monitor itself, there is simply no evidence in the record that he tampered with any GPS data that had previously been generated by the ankle monitor.

{¶67} The testimony at trial indicates that the GPS data from the ankle monitor was uploaded to a computer every ten minutes. Tr. 57. There was no testimony that suggested that the GPS data that documented Shepherd's previous movements was only stored on the ankle monitor. Similarly, there is no evidence that suggests that Shepherd, in damaging the ankle monitor, destroyed the record of his previous movements during the timeframe in which he was alleged to have used opiates. Thus, while the evidence of Shepherd's previous movements was relevant to the official proceeding in the recovery court, there is no indication that he tampered with this evidence. The State also has not demonstrated how GPS data

-36-

regarding his future current locations would be relevant to whether he had previously used opiates.

{¶68} While Shepherd knew of a past official investigation (the drug screen) and a future official proceeding (the hearing in recovery court), he did not, in removing his ankle monitor, tamper with evidence that was relevant to either of these inquiries. *See State v. Moulder*, 2d Dist. Greene No. 08-CA-108, 2009-Ohio-5871, ¶ 7. However, R.C. 2921.12(A)(1) also covers situations in which an individual knows that an official investigation or official proceeding is likely to be instituted. R.C. 2921.12(A)(1). Before Shepherd cut off the ankle monitor, an official investigation into his future whereabouts was not likely to be instituted. However, Shepherd's ankle monitor had a feature that would send an alert to his probation officer if he (Shepherd) attempted to remove the device. Tr. 21, 27, 59.

{¶69} If Shepherd was aware of the alert feature on his ankle monitor, he would certainly have known that his probation officer, upon receiving an alert, was likely to investigate what had triggered this notification. *See* Tr. 22, Ex. 4. However, while Shepherd may have known that an investigation was likely to be instituted if he cut off the ankle monitor, the act of cutting off this device itself was not tampering with evidence. Until he cut off the ankle monitor, this device was not evidence that was relevant to an investigation that was likely to be instituted.

{¶70} Before Shepherd cut off this device, the intact ankle monitor was not evidence that was relevant to a likely investigation into an alert notification. The act of cutting off the ankle monitor was the event that was likely to prompt an investigation and was the act that was likely to be investigated. Thus, the ankle monitor was not evidence that was relevant to the likely investigation until after he cut off this device. Once Shepherd had cut off this device, the damaged ankle monitor then became evidence of the act that triggered the alert and became evidence that was relevant to a likely investigation into what had triggered the alert.

{¶71} After the device became evidence that was relevant to an investigation that was likely to be instituted, there is no indication in the record that Shepherd tampered with the damaged ankle monitor. Rather, the evidence in the record indicates that the damaged ankle monitor was left next to a knife on Shepherd's kitchen table in his residence. Tr. 28. Further, while the act of cutting off the ankle monitor turned this device into evidence of the offense of criminal damaging,[2] there is similarly no evidence that Shepherd tampered with the ankle monitor once the device was evidence of criminal damaging.

{¶72} At 10:32 A.M. on September 4, 2018, Shepherd's probation officer received an alert that indicated there was an issue with Shepherd's ankle monitor.

---

[2] Shepherd was charged and convicted of the offense of criminal damaging. Doc. 25. Once damaged, whether the ankle monitor could possibly have been evidence of other offenses or violations of the terms of his community control is not before this Court, and I would make no determination thereon.

Tr. 27. The probation officer then went directly to Shepherd's residence to inquire into this alert. Tr. 28. When there was no answer at the front door, the probation officer entered Shepherd's residence through a window and discovered the damaged ankle monitor on Shepherd's kitchen table next to a knife. Tr. 28. The probation officer then searched the residence and determined that Shepherd was not present. Tr. 28. Thus, assuming the probation officer's likely investigation into the alert sent from the ankle monitor qualifies as an official investigation within the meaning of R.C. 2921.12(A)(1), Shepherd did not tamper with any evidence that was relevant to an investigation that was likely to be instituted.

{¶73} At the time that the probation officer found the damaged ankle monitor next to a knife on Shepherd's kitchen table and determined that Shepherd was not in his residence, the probation officer could conclude that Shepherd had fled from his residence, violating the terms of his house arrest and community control. This ankle monitor was subsequently available for use at trial and was admitted at trial as evidence. Tr. 36. Ex. 6. However, there was no evidence produced at trial that indicates that Shepherd took steps to tamper with the damaged ankle monitor once it was relevant evidence to this likely investigation. Rather, the record indicates that the evidence that was relevant to the probation officer's inquiry was left on Shepherd's kitchen table in his residence.

**{¶74}** Further, while GPS data regarding Shepherd's subsequent movements after he fled from his residence would have told the probation officer exactly where Shepherd was located, the GPS data regarding Shepherd's subsequent movements did not exist at the time that Shepherd cut off the ankle monitor. There is no evidence in the record that Shepherd tampered with the GPS data by removing the ankle monitor. In this case, the act of removing the ankle monitor prevented GPS data regarding Shepherd's subsequent movements from being generated and then uploaded to the OAMS computer system. Shepherd could not tamper with GPS data that did not exist.

**{¶75}** In this case, there is also no indication that Shepherd acted with the specific purpose of "impair[ing the] value or availability" of the ankle monitor as evidence in an official proceeding or an official investigation. R.C. 2921.12(A)(1). "A person acts purposely when it is the person's specific intention to cause a certain result * * *." R.C. 2901.22(A). Further, "[f]or the third element of 'purpose' to be met, the act that constitutes tampering must be a separate act from those that make up the crime itself." *State v. Crocker*, 2015-Ohio-2528, 38 N.E.3d 369, ¶ 37 (4th Dist.) (holding that this conclusion is consistent with the rule of lenity).

**{¶76}** The context of this case indicates that Shepherd cut off his ankle monitor with the purpose of violating the terms of his community control supervision—not with the purpose of impairing the value or availability of the ankle

monitor as evidence. In this case, Shepherd cut off his ankle monitor after he tested positive for opiates and after he was informed that a hearing in recovery court had been scheduled to address the results of his drug screen. Tr. 21. Once he had cut off his ankle monitor, he then fled from his residence where he had been placed under house arrest. Tr. 28. The record also indicates that Shepherd's mother was in contact with him after learning that he had fled from his residence. Tr. 30-31. Shepherd's mother notified the relevant authorities that Shepherd was going to turn himself in at the court that afternoon. Tr. 30.

{¶77} Thus, the decisions that Shepherd made in between learning of the scheduled hearing and turning himself in at the court appear to revolve around his apparent reluctance to answer for the results of his drug screen. This context of Shepherd's actions indicates that he cut off his ankle monitor with the purpose of breaking free of his house arrest to avoid appearing at the scheduled hearing. The evidence in the record does not prove that his purpose was to tamper with evidence—that he was thinking, at the time he cut off his ankle monitor, about what materials might have evidentiary value at a subsequent proceeding or investigation and what actions he could take to impair the value or availability of those materials.

{¶78} The record also indicates that the act of cutting off the ankle monitor was itself the violation of the terms of his community control. In this case, there was no "separate act" apart from violating the terms of his community control that

could constitute the offense of tampering with evidence. *Crocker, supra*, at ¶ 37. In this case, the act that the State alleges to be tampering with evidence is the same act that constituted the substance of the violation of the terms of his community control. *Id*. However, once Shepherd had cut off the ankle monitor—committing the offense of criminal damaging and several community control violations—there is no indication that Shepherd took any additional action to tamper with it in any way in order to impair its value or availability as evidence that was relevant to any official proceeding or official investigation.

{¶79} Again, this would suggest that Shepherd was not contemplating impeding a future official investigation into his actions. R.C. 2921.12(A)(1). Rather, he simply left the ankle monitor sitting on the kitchen table in his residence and left the scene of the crime. Tr. 28. For this reason, the damaged ankle monitor was available at trial and was introduced as evidence. Tr. 36. Ex. 6. These actions do not suggest that he was attempting to prevent the ankle monitor from being used as evidence in a subsequent official proceeding or official investigation.

{¶80} Shepherd also did not impair the evidentiary value of the ankle monitor by cutting it off. If anything, this act gave the ankle monitor evidentiary value as an item that tended to establish that Shepherd may have committed the offense of criminal damaging. His failure to appear at the scheduled hearing may

have delayed the progress of an official proceeding.[3]  But this failure to appear did not deprive this official proceeding of any evidence that tended to establish a fact alleged in that proceeding.  Acting with the intention of avoiding an appearance at an official proceeding is not the same as acting with the specific purpose of impairing the value or availability of evidence that makes a "fact of consequence" in that proceeding "more * * * or less probable."  Evid.R. 401.

{¶81} In the end, there was not an official proceeding or official investigation—in progress or likely to be instituted—in which an intact ankle monitor would have been evidence that tended to establish a "fact of consequence" as "more probable or less probable."  Evid.R. 401.  Thus, in this case, Shepherd did not tamper with evidence by cutting off the ankle monitor.  Further, the evidence does not indicate that Shepherd cut off the ankle monitor with the specific purpose of depriving an official proceeding or an official investigation of evidence. Shepherd appears to have cut off his ankle monitor simply to facilitate his escape and to avoid apprehension.  Based on these conclusions, I would reverse Shepherd's conviction for tampering with evidence for insufficient evidence.

---

[3] The hearing in recovery court was scheduled for 1:00 P.M. on September 4, 2018.  Tr. 20.  At 1:15 P.M., Shepherd's mother notified the authorities that Shepherd was going to turn himself in at the court.  Tr. 30. Shepherd then turned himself in at roughly 2:15 P.M. on September 4, 2018.  Tr. 31.