[Cite as *State v. Moore*, 2021-Ohio-4414.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
PICKAWAY COUNTY

| | | |
|---|---|---|
| State of Ohio, | : | Case No. 20CA10 |
| Plaintiff-Appellee, | : | <u>DECISION AND</u><br><u>JUDGMENT ENTRY</u> |
| v. | : | |
| Julia Moore, | : | **RELEASED 12/14/2021** |
| Defendant-Appellant. | : | |

_____

<u>APPEARANCES</u>:

W. Joseph Edwards, Esq., Columbus, Ohio, for appellant.

Tomi L. Dorris, Esq., Circleville Assistant Law Director, Circleville, Ohio, for appellee.

_____

Hess, J.

{¶1}   Julia Moore ("Moore") appeals from her conviction, following a jury trial, for domestic violence against her granddaughter, M.T.  In her sole assignment of error, Moore contends that she received ineffective assistance of counsel.  Because Moore failed in her burden to show that trial counsel's performance was both deficient and prejudicial, we overrule the assignment of error and affirm the trial court's judgment.

I.  FACTS AND PROCEDURAL HISTORY

{¶2}   Moore was charged via complaint in the Circleville Municipal Court with one count of domestic violence in violation of R.C. 2919.25(A), a first-degree misdemeanor. The matter proceeded to a jury trial.

{¶3}   Melissa Michelle Martin, a special education teacher at Scioto Elementary School, testified that M.T. was her student from September 2019 until early November 2019.  M.T. spent most of each school day in a regular second-grade classroom but went

to Martin's classroom for reading and math intervention.  On November 4, 2019, M.T. "was having an exceptionally difficult day" and exhibiting "atypical" behavior.  M.T. was "climbing on things," "jumping off of things," and trying to bang her head against the wall. Principal Devin Anderson and Assistant Principal Marcy Aquino used a hold on M.T. for her safety. Martin heard M.T. had been taken off medications for focus and mood stabilization, and Martin thought M.T.'s behavior was consistent with an abrupt medication change.  Martin testified that the school notifies a child's parent if school personnel use a hold on the child or notice an adverse reaction to a medication change.

{¶4}    After M.T. calmed down and started playing on the floor in Martin's classroom, Martin heard a "ruckus in the hallway." Moore, M.T.'s grandmother and residential guardian, was "walking very quickly" down the hallway toward Martin's classroom and appeared angry.  The principals "were following her, trying to intervene, trying to get her to stop." Martin stood in her classroom doorway "probably just instinctively" because Moore's posture indicated that "her intent was not positive."  Moore "came barrelling through the doorway," and Martin moved so that Moore would not run into her.  M.T. "started saying no, no, no" and "hunkered down on the floor" behind Martin. Martin testified that Moore "just like hauled off and smacked [M.T.] in the head, but like -- like in a -- almost like grabbed her head and just, like, slammed it against the wall.  And so her head, like, bounced off the wall and then flew back * * *."  M.T. "took off running down the hallway."  Moore "chased her and hauled off and smacked her in the head again," but M.T. "was in a wider space" and did not hit anything that time.  M.T. ran outside, and when the principals followed her, Moore said, "[L]et her go.  She's fine."

{¶5}    Aquino testified that M.T. "was having a really off day for her" and "was having a roller coaster of emotions." M.T. was "wandering around" Martin's classroom "refusing to do her work." Aquino took M.T. to her office around the corner and let M.T. speak with her grandfather/Moore's husband on the phone. M.T. told him that she did not want to be at school and hung up on him. Aquino called Moore to give M.T. "a pep talk," but Moore told her to "just call the cop at the school." M.T. ran back to Martin's classroom, climbed onto a table, and said she was going to fall off. Aquino transported her to the floor, but M.T. climbed back up on the table. After this cycle repeated "a couple of times," M.T. "started kicking and hitting" Aquino, who called Anderson for assistance. M.T. became more aggressive and tried to bite them. They "did a two person seated low risk hold" on M.T. M.T. "attempted to hit her head against the wall," so they had another adult stand behind her to protect her. M.T. calmed down but later ran into the hallway and tried to get Aquino to chase her, and it was "like the whole thing just started over again." At some point, M.T. calmed down again and started playing in Martin's classroom, and Aquino returned to her office. Later, Aquino saw Moore and "jumped up to greet" her, but Moore "stormed past" her office, looking "very upset" and "very mad." Aquino followed her to Martin's classroom. Aquino saw M.T. "cower down" by Martin's legs and heard M.T. "go no, no, no, no." When M.T. stood up, Moore hit her in the head with enough force to make one of her feet lift off the ground and her head hit the wall and bounce off it. M.T. started to run away, but Moore was "right behind her" and "smacked her again." M.T. "flew" down the hallway. Moore said "let her go," but Aquino followed M.T. outside, where she sat down and cried.

{¶6} Sergeant John Murphy of the Commercial Point Police Department testified that he went to the school to investigate a complaint about a parent or guardian assaulting a child. He spoke to Martin, Aquino, M.T., and Moore. M.T. seemed "a little scared" and did not want to make eye contact with or speak to him. When Sergeant Murphy asked M.T. to point anywhere she was hurt, M.T. pointed to both sides of her head. Moore told Sergeant Murphy that she had "grabbed [M.T.] by the arm and was taking her to the car." Sergeant Murphy asked Moore whether she had hit M.T., and Moore said, "I don't think so." He arrested Moore for domestic violence.

{¶7} Kevin Moore, Moore's husband and M.T.'s grandfather, testified that someone from the school called and told him that M.T. "was misbehaving and out of control." He had received that kind of call before and asked Moore to get M.T. Later, Moore called and told him that she was being arrested, and someone called and said he needed to pick M.T. up. When he arrived at the school, M.T. ran up to him and was "real happy." He took her home, and she behaved normally, did not have any visible injuries, and denied that Moore had hit her. M.T. stayed with him for four or five hours and then went to live with her other grandparents. M.T. never told him that she was afraid of Moore or that Moore had hit her, and he did not believe Moore pushed M.T.'s head into a wall because "[s]he has a lot of patience with her grandchildren,"

{¶8} Moore testified that she previously had custody of M.T., whose mother is in prison and whose father has supervised visits with M.T. On the day in question, Moore thought she had the flu, was recovering from hernia surgery, and had a pulled Achilles tendon. Her husband told her to go to the school because M.T. was having an issue. Moore assumed she "was having one of her fits like she usually  has." M.T. had been

diagnosed with PTSD, anxiety, ADHD, and trouble sleeping, and she had had behavior issues for over a year. According to Moore, M.T.'s dad triggered her behavior issues. Moore testified that school personnel knew that M.T. had "been molested. She's had issues, with, you know, her dad and stuff like that." Moore testified that M.T. hurt herself in the past. She would bang her head on walls, chairs, and floors.

{¶9}    When Moore entered the school, the secretary told her that M.T. was "down the hall on the right." Moore headed in that direction and saw Martin and Aquino standing in a doorway looking into a room where M.T. was standing on a table. M.T. jumped to a chair, jumped to the floor, returned to the table, and repeated the sequence "a couple of times." Moore "pushed" her way into the room and "took ahold" of M.T.'s right arm. Moore wanted to "get control" of M.T. and keep her "on the ground" to "keep her from getting hurt"; Moore thought she might "bust her head" on the table. Moore testified that she has never physically harmed M.T. or lost her temper with her. M.T. started "jerking, trying to get loose." She succeeded, "dropped to her butt" in between Martin and Aquino, and called Moore a "bitch." Moore testified that M.T. "could have" hit her head on something, but Moore did not think she did. M.T. jumped up "giggling" and "took off down the hallway and out the front door * * * like she was in a marathon." Moore could not run after M.T. due to the pulled Achilles tendon. She thought M.T. was "just running to the car," signed her out, and walked outside. Moore never saw M.T. cry or act hurt.

{¶10}  The jury found Moore guilty as charged, and the court sentenced her.

## II. ASSIGNMENT OF ERROR

{¶11}  Moore assigns one error for our review:

Trial counsel provided ineffective assistance of counsel to appellant which
denied appellant her right to a fair trial under the Fifth, Sixth, and Fourteenth

Amendments of the United State's [sic] Constitution and Article I, Section 10 of the Ohio Constitution.[1]

### III.  LAW AND ANALYSIS

### A.  Standard of Review

**{¶12}**  In the sole assignment of error, Moore contends that trial counsel provided ineffective assistance.  To prevail on an ineffective assistance claim, a defendant must show: "(1) deficient performance by counsel, i.e., performance falling below an objective standard of reasonable representation, and (2) prejudice, i.e., a reasonable probability that, but for counsel's errors, the proceeding's result would have been different."  *State v. Short*, 129 Ohio St.3d 360, 2011-Ohio-3641, 952 N.E.2d 1121, ¶ 113, citing *Strickland v. Washington*, 466 U.S. 668, 687-688, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984).  Failure to satisfy either part of the test is fatal to the claim.  *See Strickland* at 697.  The defendant "has the burden of proof because in Ohio, a properly licensed attorney is presumed competent."  *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, 860 N.E.2d 77, ¶ 62. We "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' "  *Strickland* at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.E. 83 (1955).  " 'Tactical or strategic trial decisions, even if ultimately unsuccessful, do not generally constitute ineffective assistance of counsel.' "  *State v. Rizer,* 4th Dist. Meigs No. 10CA3, 2011-Ohio-5702, ¶ 37, quoting *In re Wingo,* 143 Ohio App.3d 652, 668, 758 N.E.2d 780 (4th Dist.2001).

---

[1] The assignment of error is taken from page ii of Moore's appellate brief; it is stated differently on pages iv and 5 of her brief.

## B. Testimony on Ultimate Issue

**{¶13}** Moore contends that trial counsel was ineffective for not objecting to "non-expert testimony regarding the ultimate issue" of whether Moore was guilty of domestic violence. On direct examination, the following exchange occurred between the prosecutor and Martin:

> Q. So I want to go back to the question that I asked you earlier about your training and education with regard to discipline or discipline of a child, of a student who is maybe misbehaving. Based upon your training, your education and your experience, is it appropriate discipline to take a child's head and place it in your hand and then forcefully push it up against a wall to the point where it bounced back?
>
> A. Absolutely not. That's assault.

Moore asserts that Martin's opinion testimony is inadmissible because she "is not an expert as to whether an adult's actions towards a child is [sic] domestic violence," and the issue whether Moore committed domestic violence "is not a matter beyond the knowledge of a juror" that would warrant expert testimony.

**{¶14}** "Testimony in the form of an opinion * * * is not objectionable solely because it embraces an ultimate issue to be decided by the trier of fact." Evid.R. 704. "However, opinion testimony must be admissible under Evid.R. 701 or 702." *State v. Shepherd*, 3d Dist. Hardin No. 6-19-02 & 6-19-03, 2020-Ohio-3915, ¶ 46. Under Evid.R. 701, a lay witness may give an opinion when it is "rationally based on the perception of the witness" and "helpful to a clear understanding of the witness' testimony or the determination of a fact in issue." Under Evid.R. 702, a witness may testify as an expert if: (1) "[t]he witnesses' testimony either relates to matters beyond the knowledge or experience possessed by lay persons or dispels a misconception common among lay persons," (2) "[t]he witness is qualified as an expert by specialized knowledge, skill, experience,

training, or education regarding the subject matter of the testimony," and (3) "[t]he witnesses' testimony is based on reliable scientific, technical, or other specialized information."

**{¶15}** Moore has failed in her burden to show deficient performance by counsel. Martin did not opine that Moore was guilty of domestic violence under R.C. 2919.25(A), i.e., Moore knowingly caused or attempted to cause physical harm to a family or household member. Martin's opinion that forcefully pushing a child's head up against a wall is abuse and not appropriate discipline was relevant to whether Moore had an affirmative defense of reasonable parental discipline, which was an issue to be decided by the jury. But even if Moore's opinion testimony was inadmissible, "[t]he failure to object to error, alone, is not enough to sustain a claim of ineffective assistance of counsel. To prevail on such a claim, a defendant must first show that there was a substantial violation of any of defense counsel's essential duties to [the defendant] and, second, that [the defendant] was materially prejudiced by counsel's ineffectiveness." *State v. Holloway*, 38 Ohio St.3d 239, 244, 527 N.E.2d 831 (1988). Experienced attorneys

> "learn that objections to each potentially objectionable event could actually act to their party's detriment. * * * In light of this, any single failure to object usually cannot be said to have been error unless the evidence sought is so prejudicial * * * that failure to object essentially defaults the case to the state. Otherwise, defense counsel must so consistently fail to use objections, despite numerous and clear reasons for doing so, that counsel's failure cannot reasonably have been said to have been part of a trial strategy or tactical choice."

(Omissions sic.) *State v. Johnson*, 112 Ohio St.3d 210, 2006-Ohio-6404, 858 N.E.2d 1144, ¶ 140, quoting *Lundgren v. Mitchell*, 440 F.3d 754, 774 (6th Cir.2006).

**{¶16}** Trial counsel may have decided to not object to Martin's opinion because it had no bearing on Moore's defense. Moore did not admit that she forcefully pushed

M.T.'s head up against a wall and claim it was reasonable parental discipline. Rather, Moore testified that she merely grabbed M.T.'s right arm to prevent her from jumping off furniture and getting hurt. It appears that trial counsel's strategy was to bolster this testimony and discredit Martin and Aquino's version of events—not to try to convince the jury that it would have been reasonable for Moore to discipline M.T. by forcefully pushing the child's head up against a wall. Moore has not overcome the presumption that under the circumstances, trial counsel's failure to object might be considered sound trial strategy.

{¶17} For the foregoing reasons, we reject the contention that trial counsel was ineffective for not objecting to Martin's opinion testimony.

### C. Testimony on Other Acts of Abuse

{¶18} Moore contends that trial counsel was ineffective for failing to object to and soliciting testimony on "unrelated, irrelevant, and prejudicial bad acts." Moore asserts that trial counsel should have objected when Martin testified on redirect examination about prior acts of physical abuse by Moore against M.T. and speculated "as a lay witness" that this abuse contributed to M.T.'s behavior in school. Moore also suggests that on recross examination, counsel should not have asked Martin about this abuse or whether M.T. had ever been sexually abused.

{¶19} "Relevant evidence" is "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Evid.R. 401. "Generally, all relevant evidence is admissible." *State v. Clay*, 4th Dist. Lawrence No. 11CA23, 2013-Ohio-4649, ¶ 34, citing Evid.R. 402. However, Evid.R. 404(B) states:

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith.   It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident. * * *

Moreover, Evid.R. 403(A) provides that relevant evidence "is not admissible if its probative value is substantially outweighed by the danger of unfair prejudice * * *."

**{¶20}** On redirect examination, Martin testified that "on multiple occasions [M.T.] came in with bruises.  She would come in saying grandma choked me."  Martin also testified that she believed M.T.'s "behaviors were hugely related to the abusive environment that she lived in."  On recross examination, trial counsel asked, "The abusive environment she lived in.  In the 64 days that you knew her, what was that environment?"  Martin testified about a time M.T. came to school with a bruise on her head and a time when M.T. "told her second grade teacher that grandma had choked her."  Martin testified that both events had been reported to children's services.  Trial counsel also asked Martin if she had any knowledge about sexual abuse of M.T., and Martin denied having such knowledge.

**{¶21}** Moore has failed in her burden to show deficient performance by counsel. Even if Martin's testimony about physical abuse was inadmissible, trial counsel's strategy may have been to show the jury that the defense had nothing to hide by not objecting during redirect examination and to instead discredit the testimony.  During recross examination, trial counsel insinuated that Martin had not known M.T. long enough to know what her home environment was like.  The information trial counsel elicited from Martin— a story about a single head bruise and secondhand information about a single choking accusation—suggested that Martin's earlier testimony about "multiple" bruises and

choking accusations may have been exaggerated. It appears that trial counsel asked Martin about sexual abuse in an effort to show that M.T.'s behavior issues stemmed from sexual abuse by her father, which Moore testified about later, and not physical abuse by Moore. It appears that counsel also tried to discredit Martin's testimony by eliciting testimony from Moore about how she had never lost her temper with or physically harmed M.T. and about M.T. engaging in self-harm, which might explain the head bruise Martin saw. Moore has not overcome the presumption that under the circumstances, trial counsel's actions might be considered sound trial strategy.

**{¶22}** For the foregoing reasons, we reject the contention that trial counsel was ineffective for not objecting to and soliciting testimony about prior abuse of M.T.

### D. Testimony on Traumatic Brain Injury

**{¶23}** Moore contends that trial counsel was ineffective for failing to object when Martin speculated during redirect examination that M.T. might be suffering from traumatic brain injury ("TBI") based on her behavior in school. Moore asserts that counsel made "matters worse" by asking Martin additional questions about TBI on recross examination. Moore claims counsel "had no understanding of the rules of evidence pertaining to experts" and his questioning "highlighted completely speculative prior bad acts of" Moore and "allowed for the creation of an inference that if [M.T.] suffered from TBI, it well could have been caused by [Moore's] repeated slamming [of] her head into a wall."

**{¶24}** On redirect examination Martin testified:

> So I feel like it's very unfair to [M.T.] to talk about her behavior without talking about the abuse, because the trauma and abuse causes -- it causes behavior -- I mean, it can cause TBI. I mean, if you're being hit in the head multiple times, I mean, that affects memory, that affects attention, that affects emotional regulation and focus. And that is something we're trained to look for as special education teachers.

So that was something that obviously was -- was a huge hindrance for [M.T.] and I believe created a lot of the behavioral problems we saw at school.

On recross examination, trial counsel asked Martin whether slamming one's own head against a wall could cause TBI, and she testified that it could. Trial counsel also asked whether M.T. had engaged in that behavior. While Martin was responding, the prosecutor objected and stated, "I don't believe the testimony is that [M.T.] has a TBI." Martin stated, "Correct." Subsequently, the following exchanged occurred:

Q. So you're not trying to suggest that my client has caused TBI injury to [M.T.], are you?

A. I'm going to say again what I stated previously, with my professional training, I know that assault to the head can cause TBI.

Q. And I'm going to ask you to answer my question and not give a dissertation on what you are not qualified to testify to.

[Prosecutor]: Objection.

THE COURT: I'm going to just say right now that this witness is not qualified to testify, only a medical doctor would be."

**{¶25}** Moore has failed in her burden to show deficient performance by counsel. Even if Martin's testimony about TBI was inadmissible, it appears that trial counsel's strategy was to discredit the testimony instead of objecting to it. In the previous section, we described counsel's efforts to discredit Martin's testimony about prior physical abuse by Moore, which included eliciting testimony about M.T. engaging in self-harm. Counsel tried to discredit Martin's suggestion that M.T. might have TBI from physical abuse by eliciting testimony from Martin about self-harm as a source of TBI. After Martin made an unsolicited comment indicating that it was not her testimony that M.T. had TBI, trial

counsel tried to highlight that fact for the jury by asking Martin to confirm that she was not suggesting Moore caused M.T. to have TBI. When Martin gave a nonresponsive answer about knowing from her professional training that assault to the head can cause TBI, trial counsel declared that she was "not qualified" to make that statement, and the trial court agreed in the presence of the jury. Moore has not overcome the presumption that under the circumstances, trial counsel's actions might be considered sound trial strategy.

**{¶26}** For the foregoing reasons, we reject the contention that trial counsel was ineffective for not objecting to and soliciting testimony on TBI.

### E. Concession of Guilt

**{¶27}** Moore suggests that trial counsel was ineffective for making the following statement during cross-examination of Martin:

> Q. Let's go back nine days after this arrest. All right? November 13th, according to Devin Anderson and Marcy Aquino, November 13, nine days after this arrest where you witnessed domestic violence of this child that was your student, that you see, as your own testimony, daily, running around and out of classroom [sic], refusing to follow directions, hitting staff members and cursing. This is where it gets more -- something more memorable [sic].

Moore underlined the phrase "where you witnessed domestic violence" in her appellate brief. In doing so, she appears to suggest that trial counsel was deficient and prejudiced her by conceding that Martin witnessed Moore commit domestic violence.

**{¶28}** Moore has failed in her burden to show prejudice due to trial counsel's purportedly deficient performance. The trial transcript does not capture the tone or body language counsel used when making the above statement. However, during the trial, counsel tried to discredit Martin and Aquino's version of events and argued to the jury that there was insufficient evidence to convict Moore of domestic violence. After reading

the above statement in context with the rest of the trial transcript, we conclude that no reasonable juror would have interpreted the statement as a concession of Moore's guilt. Moore has not shown a reasonable probability that, but for counsel's alleged error, the proceeding's result would have been different.

**{¶29}** For the foregoing reasons, we reject the contention that trial counsel was ineffective for making the above statement about Martin witnessing domestic violence.

## F.  Conclusion

**{¶30}** Moore failed in her burden to demonstrate ineffective assistance of counsel. Accordingly, we overrule the sole assignment of error and affirm the trial court's judgment.

JUDGMENT AFFIRMED.

## JUDGMENT ENTRY

It is ordered that the JUDGMENT IS AFFIRMED and that appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Circleville Municipal Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio. Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. & Abele, J.: Concur in Judgment and Opinion.


For the Court


BY: _____
      Michael D. Hess, Judge




### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**